IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Civil Action No. 2:14-25143 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| E. I. du Pont de Nemours and Company, | : | |
| | : | |
| Defendant. | : | |

**E. I. DU PONT DE NEMOURS AND COMPANY'S
RESPONSE TO THE COURT'S ORDER DATED JULY 27, 2015**

In response to the Court's July 27, 2015 order (the "Order") granting the joint oral motion for continuance made by the United States and E. I. du Pont de Nemours and Company ("DuPont"), and further granting DuPont an opportunity to furnish evidence, DuPont hereby submits the following response and related exhibits and declarations (collectively, the "Response"). The Response addresses the basis by which DuPont has ensured the satisfaction of the obligations imposed on DuPont by the proposed consent decree among the United States and DuPont in this present action (the "Consent Decree").

**I.    Relevant Factual Background**

On August 27, 2014, the United States filed a complaint (the "Complaint") against DuPont, alleging that DuPont violated Sections 112(r)(1) and 112(r)(7) of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7412(r)(1) & (r)(7), Section 103 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9603, and Sections 304 and 312 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. §§ 11004 & 11022. The events giving rise to the Complaint occurred at the chemical manufacturing plant located at 901 DuPont Avenue, Belle, West Virginia (the "Belle Plant").

With respect to the alleged CAA violations, all of the United States' allegations relate to events that occurred on January 22 and 23, 2010. *See* Complaint, Doc. 1, ¶¶ 39-89. Specifically, the United States alleges that DuPont violated the CAA when the following three accidental chemical releases occurred at the Belle Plant: (1) a January 22, 2010 release of methyl chloride from the Belle Plant's F3455 Unit, (2) a January 23, 2010 release of oleum from the Belle Plant's spent acid recovery ("SAR") unit, and (3) a January 23, 2010 release of phosgene from the Belle Plant's Small Lots Manufacturing ("SLM") Unit (collectively referred to as the "January 2010 Events"). *See id.* at ¶¶ 103-168. The remainder of the violations alleged in the Complaint relate to allegations of deficient reporting of accidental releases of chemicals regulated under CERCLA and EPCRA. *See id.* at ¶¶ 97-102 and 174-211.

After investigating the January 2010 Events, the United States Environmental Protection Agency ("EPA") issued to DuPont a Unilateral Administrative Order, Docket No. CAA-03-2010-0231DA (the "UAO") on March 18, 2010. Complaint at ¶ 98. As set forth in the United States' Revised Memorandum in Support of Entry of the Consent Decree, EPA's UAO required DuPont to take prompt and significant corrective actions to address what EPA determined were contributing factors that lead to the January 2010 Events. United States' Revised Memorandum in Support of Entry, Doc. 15 (the "Revised Memo), pp.10-11. Such measures included all of the following: (1) implement existing standard operating process ("SOPs") at the Belle Plant; (2) review the Belle Plant's process hazard analyses ("PHAs") for all processes regulated under Section 112(r)(1) of the CAA, and on the basis of such review, propose and implement management of change ("MOC") procedures that may have required change to applicable Belle Plant SOPs; (3) prepare and implement a comprehensive training program detailing how phosgene was to be used and handled; (4) prepare and implement a comprehensive training

program on the Belle Plant's existing SOPs and the SOPs developed pursuant to the UAO: and (5) submit to EPA incident investigation reports for the January 2010 Events. *Id.* As EPA acknowledged, DuPont complied with the schedules in the UAO and satisfied all obligations in a timely manner. *Id.* at 11; Complaint at ¶ 96. As a result, EPA terminated the UAO on December 7, 2011. DuPont's efforts to comply with the UAO were significant, with costs totaling nearly $7,000,000. Revised Memo at 17; Complaint at ¶ 96.

In addition, DuPont permanently ceased operations of two of the three units involved in the January 2010 Events, discontinuing operations of the SAR Unit in March 2010 and the SLM Unit's phosgenation process in June 2011. Joint Position Statement, Doc. 15-1, p. 4. EPA has indicated that the permanent closure of the SAR and SLM Unit was an acceptable compliance measure to ensure that accidental chemical releases would not occur at the Belle Plant. *Id.* As a result of the closure of the SLM Unit's phosgenation process, DuPont removed phosgene as a raw material at the Belle Plant.

## II.     Consent Decree Obligations

To address the issues that are the subject of the Complaint, the Consent Decree requires payment of a substantial civil penalty of $1,275,000, and imposes obligations in the form of injunctive relief. The injunctive relief provisions require preparation for EPA's review of a Process Closure Report that describes the manner and timing by which DuPont dismantled the SAR Unit and the SLM Unit's phosgenation process, Consent Decree, ¶ 11. In addition, the Consent Decree requires the development and implementation of three separate standard operating procedures ("SOP"): (1) an SOP for the maintenance and response to active alarms, in compliance with 40 C.F.R. § 68.69(a)(4) (the "Alarm SOP"); (2) an SOP for systematic and routine review of the Belle Plant's management of change ("MOC") process (the "MOC SOP"); and (3) an SOP governing required notifications to the appropriate federal, state, and local

agencies when a release occurs at the Belle Plant in excess of the reportable quantities specified in CERCLA and EPCRA (the "Release SOP"). Consent Decree, ¶¶ 12-14. The Consent Decree further requires training on the Release SOP, which must include a simulation of an emergency release scenario (to be documented in an Emergency Release Process Report). Consent Decree, ¶ 14. Finally, the Consent Decree imposes two-year certification obligations meant to ensure that the SOPs developed pursuant to the Consent Decree continue to be implemented at the Belle Plant. Consent Decree, ¶ 20.

As the United States describes in its Revised Memo, the Consent Decree's injunctive relief provisions are designed to improve the Belle Plant's "prevention of, response to, and reporting of accidental chemical releases." Revised Memo at 14. In that respect, EPA has "thoroughly evaluated" the Consent Decree's injunctive relief provisions and determined that such provisions are sufficient to address the alleged "remaining deficiencies" at the Belle Plant that had not been corrected as part of the UAO response and DuPont's other efforts. *See* Decl. of Mary Hunt, ¶ 47. Further, the Consent Decree's injunctive relief provisions are meant to build upon the efforts that DuPont previously undertook to respond to the UAO to "ensure that [the] corrective measures taken pursuant to the UAO" continue to "help [the Belle Plant] remain compliant with CERCLA, EPCRA and the CAA." Revised Memo at 16-17.

### III.   Ensuring Satisfaction of the Consent Decree

As set forth above, DuPont's prior actions in response to the UAO and permanent cessation of operations of two out of three units involved in the January 2010 Events have significantly addressed the factual bases underlying the Complaint. Moving forward, The Chemours Company, FC LLC ("Chemours"), a former wholly-owned subsidiary of DuPont and direct successor to DuPont at the Belle Plant, has contractually agreed to satisfy all of the Consent Decree's injunctive relief provisions. Joint Statement at 2-3.

Subsequent to executing the Consent Decree, DuPont undertook a corporate reorganization that resulted in the formation of Chemours as a wholly-owned subsidiary. *See* DuPont Decl. ¶ 2, Chemours Decl. ¶ 2. On February 1, 2015, Chemours became the legal owner of, and began exercising operational control, over the Belle Plant. *See* DuPont Decl. ¶ 4, Chemours Decl. ¶ 3. On January 28, 2015, DuPont and Chemours entered into an agreement, entitled the *Environmental Compliance Agreement*, effective February 1, 2015 (attached as Exhibit A), whereby DuPont transferred and Chemours accepted legal possession of the Belle Plant subject to all rights and obligations set forth in the Consent Decree. *See* Exhibit A, ¶ 2; DuPont Declaration at ¶ 9, Chemours Declaration at ¶ 6. Pursuant to the *Environmental Compliance Agreement*, Chemours accepts full responsibility for satisfying all provisions of the Consent Decree. *See* Exhibit A, ¶ 5; Chemours Declaration at ¶ 7. Effective July 1, 2015, Chemours became a publicly traded company, independent of DuPont.

Notwithstanding that the Consent Decree is not yet legally effective, DuPont notified the United States, consistent with the intent of Paragraph 4 of the Consent Decree, that Chemours was then engaged in negotiations with a third party about the purchase of certain assets at the Belle Plant by the third party. Joint Statement at 3. Such negotiations resulted in the sale of two process units at the Belle Plant from Chemours to Optima Belle, LLC ("Optima") on June 1, 2015. Chemours Declaration at ¶ 8. As further noted in the Joint Statement, Chemours and Optima entered into an agreement, *Agreement Governing Satisfaction of EPA Consent Decree* (attached as Exhibit B) ("Optima Agreement"), pursuant to which Chemours retains all responsibility for satisfying the obligations of the Consent Decree subsequent to the transfer of the relevant process units from Chemours to Optima. *See* Exhibit B, ¶ 3; Chemours Declaration at ¶ 11. The Optima Agreement further provides that Optima acknowledges that Chemours

retains all necessary legal rights, including a right of access to the Belle Plant, in order for Chemours to satisfy the obligations of the Consent Decree. *See* Exhibit B, ¶ 4; Chemours Declaration at ¶ 12. Optima further agrees through the Optima Agreement to take all actions necessary to support Chemours in Chemours' satisfaction of the Consent Decree. *See* Exhibit B, ¶ 5.

Consistent with both the Environmental Compliance Agreement and the Optima Agreement, Chemours will satisfy the obligations of the Consent Decree and has the legal, technical, and financial means to do so. See Chemours Decl., ¶ 13. Thus, pursuant to the Optima Agreement, Chemours, DuPont's successor in interest at the Belle Plant, retains a full right of access to the Belle Plant to satisfy all remaining obligations of the Consent Decree.

Respectfully submitted,

/s/ Paula L. Durst
Paula L. Durst
Attorney for Defendant,
E. I. du Pont de Nemours and Company

OF COUNSEL:

Bart E. Cassidy
Michael Dillon
MANKO, GOLD, KATCHER & FOX, LLP
401 City Avenue, Suite 901
Bala Cynwyd, PA 19004
(484) 430-5700

Dated: August 6, 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Civil Action No. 2:14-25143 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| E. I. du Pont de Nemours and Company, | : | |
| | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

    I, Paula L. Durst, counsel for Defendant E. I. du Pont de Nemours and Company, hereby certify that on August 6, 2015, I electronically-filed the foregoing Response to the Court's Order Dated July 27, 2015 on behalf of E. I. du Pont de Nemours and Company with the Clerk of the Court using the CM/ELF system, which will send notification of such filing to the following:

Cara M. Mroczek
U.S. Department of Justice
Environmental and Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
202-514-1447
Fax:  202-616-6583
Cara.mroczek@usdoj.gov

Sam Hirsh
U.S. Department of Justice
Environmental and Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
202-514-1447
Fax:  202-616-6583

Gary L. Call
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV  25326-1713
304-347-2200
Fax:  304-347-5443
Gary.call@usdoj.gov

J. Christopher Krivonyak
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV  25326-1713
304-347-2200
Fax:  304-347-5104
Chris.krivonyak@usdoj.gov

                                                  /s/ Paula L. Durst
                                                  Paula L. Durst, Esquire