## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

E.I. du Pont de Nemours and Company

    *Defendant.*

Civ. No.    **2:14-25143**

**AMENDED**

**CONSENT DECREE**
**With such amendment consisting**
**of the appendix attached hereto.**

## TABLE OF CONTENTS

I. JURISDICTION AND VENUE ........................................................................ 2
II. APPLICABILITY .......................................................................................... 3
III. DEFINITIONS .............................................................................................. 4
IV. CIVIL PENALTY .......................................................................................... 5
V. COMPLIANCE REQUIREMENTS ............................................................... 6
VI. DELIVERABLES ........................................................................................ 10
VII. REVIEW OF DELIVERABLES .................................................................. 10
VIII. REPORTING REQUIREMENTS ................................................................ 11
IX. STIPULATED PENALTIES ........................................................................ 13
X. FORCE MAJEURE ..................................................................................... 16
XI. DISPUTE RESOLUTION ........................................................................... 18
XII. INFORMATION COLLECTION AND RETENTION ................................ 21
XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ...................... 23
XIV. COSTS ........................................................................................................ 25
XV. NOTICES .................................................................................................... 25
XVI. EFFECTIVE DATE ..................................................................................... 26
XVII. RETENTION OF JURISDICTION .............................................................. 26
XVIII. MODIFICATION ......................................................................................... 27
XIX. TERMINATION .......................................................................................... 27
XX. PUBLIC PARTICIPATION ........................................................................ 28
XXI. SIGNATORIES/SERVICE .......................................................................... 29
XXII. INTEGRATION ........................................................................................... 29
XXIII. FINAL JUDGMENT ................................................................................... 29

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree alleging that Defendant E.I. du Pont de Nemours and Company ("DuPont" or "Defendant") violated Section 112(r)(1) and (7) of the Clean Air Act ("CAA"), 42 U.S.C. § 7412(r)(1) and (7); Section 103 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9603; and Sections 304 and 312 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. §§ 11004 and 11022.

The Complaint alleges that Defendant violated the general duty clause and risk management program provisions of Section 112(r) of the CAA, 42 U.S.C. § 7412(r); the emergency release notification requirements of Section 103 of CERCLA, 42 U.S.C. § 9603, and Section 304 of EPCRA, 42 U.S.C. § 11004; and the emergency and hazardous chemical inventory forms requirements of Section 312 of EPCRA, 42 U.S.C. § 11022, at Defendant's chemical manufacturing facility in Belle, West Virginia ("Facility").

DuPont has decided, for independent reasons, to cease operation of the SAR Unit and to shut down the Phosgenation Process as of March 2010, and June 2011, respectively. By execution of this Consent Decree or otherwise, DuPont does not admit to any liability arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

-1-

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b); Section 325 of the EPCRA, 42 U.S.C. §11045; and Section 109(c) of the CERCLA, 42 U.S.C. § 9609(c), and over the Parties.  Venue is proper in this judicial district pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b); Section 325 of EPCRA, 42 U.S.C. § 11045; and Section 109(c) of  CERCLA, 42 U.S.C. § 9609(c), and 28 U.S.C. §§ 1391(b), 1391(c) and 1395(a), because Defendant is located, and a substantial part of the events or omissions giving rise to the claims occurred, in this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b); Section 325 of the EPCRA, 42 U.S.C. § 11045; and Section 109(c) of CERCLA, 42 U.S.C. § 9609(c).

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States in accordance with Section XV of this Decree (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. DEFINITIONS

7. Terms used in this Consent Decree that are defined in the Acts or in regulations promulgated pursuant to the Acts shall have the meanings assigned to them in the Acts or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

  a. "Complaint" shall mean the complaint filed by the United States in this action;

  b. "Consent Decree" or "Decree" shall mean this Decree;

  c. "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

  d. "Defendant" shall mean E.I. du Pont de Nemours and Company;

  e. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

  f. "Effective Date" shall have the definition provided in Section XVI.

  g. "Facility" shall mean the portion of the chemical manufacturing plant located at 901 DuPont Avenue, in Belle, West Virginia currently owned and operated by Defendant;

  h. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

-4-

   i.  "Parties" shall mean the United States and Defendant;

   j.  "Phosgenation Process" shall mean the former phosgene raw material handling process equipment that had been located within Defendant's SLM Unit which utilized phosgene as a raw material.

   k.  "SAR Unit" shall mean the former Spent Acid Recovery Unit that had been located at Defendant's chemical manufacturing plant at 901 DuPont Avenue, in Belle, West Virginia prior to its dismantling.

   l.  "Section" shall mean a portion of this Decree identified by a roman numeral;

   m.  "United States" shall mean the United States of America, acting on behalf of EPA;

## IV. CIVIL PENALTY

  8.  Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $1,275,000 as a civil penalty.  If any portion of the civil penalty due to the United States is not paid when due, DuPont shall pay interest on the amount past due accruing from the Effective Date through date of payment at the rate specified in 28 U.S.C. § 1961.

  9.  Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Southern District of West Virginia, 300 Virginia Street East, Robert C. Byrd Federal Courthouse Room 4000, Charleston, WV  25301, (304) 345-2200.  At the time of

payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. E.I. DuPont De Nemours and Company* and shall reference the civil action number and DOJ case number 90-5-2-1-10707, to the United States in accordance with Section XV of this Decree (Notices), by email to cinwd_acctsreceivable@epa.gov, and by mail to:

> EPA Cincinnati Finance Office
> 26 W. Martin Luther King Drive
> Cincinnati, Ohio 45268

10.    Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal income tax.

## V. COMPLIANCE REQUIREMENTS

11.    <u>Closure of SAR Unit and Shutdown of Phosgenation Process</u>.  As of June 2011, Defendant has and will continue to permanently cease operations of the SAR Unit and the Phosgenation Process at the Facility.  Further, Defendant represents to the United States that it has no plan to resume operations of the SAR Unit or the Phosgenation Process at the Facility. Within 120 days of the Effective Date, Defendant shall submit a process closure report ("the Closure Report") for the SAR Unit and Phosgenation Process to EPA.  The Closure Report shall include a description of how and when the processes were closed (process equipment removed, piping decontaminated/cleaned of all extremely hazardous substances and/or regulated substances, etc.).

-6-

12.      <u>Procedures for Response to Active Alarms</u>.  Within 90 days of the Effective Date, Defendant shall develop and submit to EPA, in accordance with Paragraphs 15 and 16, below, a standard operating procedure for the maintenance of and response to active alarms associated with any process operations subject to the risk management program ("RMP") requirements or OSHA process safety management ("PSM") standards (the "Alarm SOP").  The Alarm SOP shall comply with 40 CFR § 68.69(a)(4) and include, for all process operations subject to RMP requirements or OSHA PSM standards,  a systematic and periodic review of active alarms.

a.      On the first and second anniversaries of the Effective Date of this Consent Decree, Defendant shall, consistent with 40 CFR § 68.69, certify to EPA in writing that the Alarm SOP is current, accurate and being implemented.

13.      <u>Enhanced Management of Change ("MOC") Process</u>.  Within 90 days of the Effective Date, Defendant shall develop and submit to EPA, in accordance with Paragraphs 15 and 16, below, a standard operating procedure for the systematic and routine review of its MOC process ("MOC SOP").  The MOC SOP shall comply with 40 CFR § 68.75 and include, for all process operations subject to RMP requirements or OSHA PSM standards, a pre-startup safety review for process changes appropriate for the process and the nature of the chemical substances.

a.      On the first and second anniversaries of the Effective Date of this Consent Decree, Defendant shall, consistent with 40 CFR § 68.69, certify to EPA in writing that the MOC SOP is current, accurate and being implemented.

14.    Emergency Release Notification Process.

a.    Within 90 days of the Effective Date, Defendant shall develop and submit to EPA, in accordance with Paragraphs 15 and 16, below, a standard operating procedure for notifying the appropriate federal, state, and local emergency responders of a release at the Facility of any hazardous substance or EHS exceeding the reportable quantity ("RQ") as required by the emergency release notification requirements of Section 103 of CERCLA, 42 U.S.C. § 9603, and Section 304 of EPCRA, 42 U.S.C. § 11004, and their implementing regulations at 40 C.F.R. §§ 302 and 355 ("Release SOP").

b.    The Release SOP shall clearly identify the correct contact information for each of the agencies to which notification is required pursuant to 40 C.F.R. §§ 302 and 355, and the primary Facility personnel, plus at least one back-up for each primary Facility personnel, responsible for making the notifications ("emergency notification personnel") in accordance with the regulations. The Release SOP shall also include a procedure for ensuring that the names of the emergency notification personnel and the contact information for the federal, state, and local responders to whom notification would be required are kept current.

c.    Within 60 days of receiving from EPA approval of the Release SOP, Defendant shall provide initial training to the primary and back-up emergency notification personnel identified pursuant to Paragraph 14.b. regarding  the procedure for making required notifications under the Release SOP.

d.    The initial training required by Paragraph 14.c, above, shall include a training exercise simulating a release of a hazardous substance in a quantity exceeding the RQ, in

order to evaluate the performance of emergency notification personnel in implementing the Release SOP.  The training exercise must consist of a realistic emergency release scenario in which the emergency notification personnel shall be required to determine the location of the release and whether the estimated amount of the hazardous substance released exceeded the applicable reportable quantity, and provide the correct emergency release notification pursuant to the Release SOP.  The training exercise shall also consider complications that could occur that could complicate the determination of whether the emergency release of a hazardous substance resulted in an exceedance of the applicable reportable quantity.

   e.  Within 90 days of receiving approval of the Release SOP, Defendant shall develop and submit to EPA, in accordance with Paragraph 15, below, an Emergency Release Process Report ("the Release Report").  The Release Report shall include a certification of compliance with Paragraph 14, report on the dates of training and the release notification exercise and any problems encountered and resolutions thereto.

   f.  On the first and second anniversaries of the Effective Date of this Consent Decree, Defendant shall certify to EPA in writing that the Release SOP is current, accurate and being implemented.

   g.  Defendant shall provide written notice to EPA at least 14 days prior to conducting the training exercise pursuant to sub-paragraph 14.d.  Defendant shall allow EPA to observe any such exercise; EPA shall use best efforts to provide advance notice to Defendant of EPA's intent to observe, but such notice shall not be required.

## VI.  DELIVERABLES

15.     Within 90 Days of the Effective Date, Defendant shall submit to EPA for its review and approval, pursuant to Paragraph 16, the Standard Operating Procedures required in Paragraphs 12-14 (the Deliverable(s)).  The certification reports, submitted pursuant to 12.a, 13.a, and 14.e are not subject to review and approval under this provision.

## VII.  REVIEW OF DELIVERABLES

16.     After reviewing any Deliverable, EPA shall respond in writing within 30 days, unless EPA notifies Defendant that it needs an extension of time for review, and:

      a.     approve the Deliverable;

      b.     approve the Deliverable upon specified conditions;

      c.     approve part of the Deliverable and disapprove the remainder; or

      d.     disapprove the Deliverable.

17.     Within 60 days of receipt of the EPA's approval of a Deliverable pursuant to Paragraph 16.a, Defendant shall begin implementing the Deliverable in accordance with its approved terms.

18.     If EPA conditionally approves a Deliverable or approves a Deliverable only in part pursuant to Paragraph 16.b or c, Defendant shall, upon written direction from EPA, take all actions required by the approved Deliverable or portions of the Deliverable, subject to Defendant's right to dispute only the conditions or the decision to disapprove portions, under Section XI of this Decree (Dispute Resolution).

19.     Resubmission of Deliverables.

      a.      If EPA disapproves a Deliverable in whole or in part pursuant to Paragraph 16, Defendant shall, within 45 Days, or such other time period to which the Parties agree in writing, correct all deficiencies and resubmit the Deliverable, or disapproved portion thereof, for approval in accordance with this Section.

      b.      Any stipulated penalties applicable to the original Deliverable, as provided in Section IX of this Decree, will accrue during the 45-Day period specified in the preceding subparagraph, but will not be payable unless: (i) Defendant fails to resubmit the Deliverable within the 45-Day time period; or (ii) the original Deliverable was so deficient as to constitute a material breach of Defendant's obligations under this Decree.

      c.      If EPA disapproves a resubmitted Deliverable or portion thereof in whole or in part, the EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

## VIII.  REPORTING REQUIREMENTS

20.      Defendant shall submit the following reports:

      a.      Closure Report pursuant to Paragraph 11;

      b.      Certifications pursuant to Paragraphs 12.a, 13.a and 14.f;

      c.      Emergency Release Process Report pursuant to Paragraph 14.e;

For the Certifications submitted pursuant to Paragraph 12.a, DuPont shall include a summary of DuPont's evaluation of, and the response actions taken by DuPont in response to, the results of

each quarterly analysis of the implementation of the Alarm SOP.  Each Certification that DuPont

submits pursuant to Paragraphs 12.a, 13.a, 14.e and 14.f shall also include a description of any

non-compliance with the requirements of the paragraph for which DuPont is making the related

Certification, including an explanation of the reason for such non-compliance and of the

remedial steps taken, or to be taken, to prevent or minimize such non-compliance in the future.

Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to

provide the notice required by Section X of this Consent Decree (Force Majeure).

     21.     Defendant shall submit all reports to the persons designated in Section

XV of this Consent Decree (Notices).

     22.     Each report submitted by Defendant under this Section shall be signed by

an official of DuPont and include the following certification:

> I certify under penalty of law that this document and all
> attachments were prepared under my direction or supervision in
> accordance with a system designed to assure that qualified
> personnel properly gather and evaluate the information submitted.
> Based on my inquiry of the person or persons who manage the
> system, or those persons directly responsible for gathering the
> information, the information submitted is, to the best of my
> knowledge and belief, true, accurate, and complete.  I am aware
> that there are significant penalties for submitting false information,
> including the possibility of fine and imprisonment for knowing
> violations.

This certification requirement does not apply to emergency or similar notifications where

compliance would be impractical.

     23.     The reporting requirements of this Consent Decree do not relieve Defendant of

reporting obligations required by the CAA, CERCLA, or EPCRA or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

24.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX. STIPULATED PENALTIES

25.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Decree, including making any submission required by this Decree and complying with any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

26.     Late Payment of Civil Penalty.   If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

27.     Compliance Milestones.  The following stipulated penalties will accrue per violation per Day for each violation of each requirement identified in Paragraphs 11 through 14; provided that this Paragraph shall not apply to the Closure Report required pursuant to Paragraph 11, the Certifications required pursuant to Paragraphs 12.a, 13.a, and 14.f, and the Release

-13-

Report required pursuant to Paragraph 14.e, all of which are covered exclusively by Paragraph 28.

| Period of Noncompliance | Penalty per Day per Violation |
| --- | --- |
| 1st through 14th Days | $1,000 |
| 15th through 30th Days | $2,500 |
| 31st Day and beyond | $3,500 |

28.    Reporting Requirements.  The following stipulated penalties will accrue per violation per Day for each violation of the reporting requirements of Section VIII of this Consent Decree:

| Period of Noncompliance | Penalty per Day per Violation |
| --- | --- |
| 1st through 14th Days | $500 |
| 15th through 30th Days | $1,000 |
| 31st Day and beyond | $1,500 |

29.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

30.    Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

31.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

32.     Stipulated penalties shall continue to accrue as provided in Paragraph 34, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the Effective Date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

33.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

34.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in

-15-

28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

35.     Subject to the provisions of Section XIII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of federal law, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## X.   FORCE MAJEURE

36.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

37.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant

-16-

shall provide notice orally or by electronic transmission to notify EPA Region III within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

38.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA

-17-

will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

39.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

40.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 36 and 37, above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI. DISPUTE RESOLUTION

41.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

42.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

-18-

considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

43.     <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

44.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

45.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 30 Days of

-19-

receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

46.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

47.     <u>Standard of Review</u>.

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 45 pertaining to the adequacy of the compliance undertaken pursuant to this Consent Decree, Section V "Compliance Requirements," and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.     <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 45, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

48.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 32.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.  INFORMATION COLLECTION AND RETENTION

49.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.     monitor the progress of activities required under this Consent Decree;

      b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

      c.     obtain documentary evidence, including photographs and similar data; and

      d.     assess Defendant's compliance with this Consent Decree.

50.     Until three years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's

-21-

performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

51.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

52.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to

any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

53.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

54.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action, through the date of lodging.

55.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 54.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Acts or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 54.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

56.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Facility or

-23-

Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 54 of this Section.

57.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, 42 U.S.C. §§ 7401–7671q; CERCLA, 42 U.S.C. § 9601 *et seq.*, as amended; and EPCRA, 42 U.S.C. §§ 11004-11049, or with any other provisions of federal, State, or local laws, regulations, or permits.

58.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

-24-

59. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV.  COSTS

60. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XV.  NOTICES

61. Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-2-1-10802

To EPA:

| Mary Hunt | Mike Welsh | Perry Pandya |
|---|---|---|
| U.S. Environmental Protection Agency | U.S. Environmental Protection Agency | U.S. Environmental Protection Agency |
| Region III | Region III | Region III |
| 1650 Arch Street | 1650 Arch Street | 1650 Arch Street |
| Mail Code 3HS61 | Mail Code 3HS61 | Mail Code 3HS61 |
| Philadelphia, PA  19103 | Philadelphia, PA  19103 | Philadelphia, PA  19103 |
| Hunt.Mary@epa.gov | Welsh.Mike@epa.gov | Pandya.Perry@epa.gov |

-25-

To Defendant:

| Plant Manager<br>Belle Plant<br>901 W. DuPont Avenue<br>Belle, WV 25015 | Lori E. Sanders, Esq.<br>Senior Counsel – Environment<br>1007 Market St., D-7086<br>Wilmington, DE 19898 | Bart E. Cassidy, Esq.<br>Manko, Gold, Katcher & Fox,<br>LLP<br>401 City Avenue, Suite 901<br>Bala Cynwyd, PA 19004 |
|---|---|---|

62.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

63.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI. EFFECTIVE DATE

64.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties it has decided to undertake prior to the Effective Date, specifically ceasing operations of the SAR Unit and the Phosgenation Process. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII. RETENTION OF JURISDICTION

65.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders

-26-

modifying this Decree, pursuant to Sections XI and XVIII, or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. MODIFICATION

66.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

67.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 47, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX. TERMINATION

68.     After the second anniversary of the Effective Date, providing that Defendant has completed the requirements of Section V (Compliance Requirements) of this Consent Decree, and has maintained continuous satisfactory compliance with this Consent Decree for a period of two years after the Effective Date and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, together with all necessary supporting documentation, stating that Defendant has satisfied those requirements, with the exception of any continuing obligations

required by this Consent Decree, including those requirements specified in Section V, Paragraph 11.

69.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

70.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section XI of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 42 of Section XI, until 90 after service of its Request for Termination.

## XX. PUBLIC PARTICIPATION

71.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

-28-

## XXI. SIGNATORIES/SERVICE

72.     Each undersigned representative of Defendant, and the Acting Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

73.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII.  INTEGRATION

74.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIII.  FINAL JUDGMENT

75.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

DATED: September 25, 2015


John T. Copenhaver, Jr.
United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. E.I.  du Pont de Nemours Company,*

FOR PLAINTIFF UNITED STATES OF AMERICA:

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


_____        _____
Dated   8-27-14                          CARA M. MROCZEK
                                         Trial Attorney
                                         Environmental Enforcement Section
                                         Environment and Natural Resources Division
                                         U.S. Department of Justice
                                         P.O. Box 7611, Ben Franklin Station
                                         Washington, D.C. 20044
                                         601 D Street NW
                                         Washington, DC 20004
                                         202-514-1447 (voice)
                                         202-514-0097 (fax)
                                         Cara.mroczek@usdoj.gov


_____        _____
Dated                                    J. CHRISTOPHER KRIVONYAK, AUSA
                                         US Attorney's Office - SDWV
                                         300 Virginia Street, East - Rm. 4000
                                         Post Office Box 1713
                                         Charleston, West Virginia  25326
                                         Main:  (304) 345-2200 | Fax:  (304) 347-5443
                                         E-mail:  chris.krivonyak@usdoj.gov

-31-

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. E.I. du Pont de Nemours and Company,*

FOR PLAINTIFF UNITED STATES OF AMERICA:

_8/27/14_____

Date

SHAWN M. GARVIN
Regional Administrator
U.S. EPA Region III
1650 Arch Street
Philadelphia, PA 19103 2029

_8/20/14_____

Date

MARCIA E. MULKEY
Regional Counsel
U.S. EPA Region III
1650 Arch Street
Philadelphia, PA 19103-2029

_8/15/14_____

Date

JEFFERIE E. GARCIA
Senior Assistant Regional Counsel
U.S. EPA Region III
1650 Arch Street
Philadelphia, PA 19103-2029

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. E.I. du Pont de Nemours and Company,*

FOR PLAINTIFF UNITED STATES OF AMERICA:


SUSAN SHINKMAN, Director                                     Date: 8/25/14
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460


ROSEMARIE A. KELLEY, Director                               Date: 08/22/14
Waste and Chemical Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460


DEAN B. ZIEGEL, Attorney-Advisor                            Date: 8/20/14
Waste and Chemical Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. E.I. du Pont de Nemours and Company*,

FOR DEFENDANT:

_8/8/2014_____
Dated

Matthew C. Koenings
Vice President- North American Operations
E.I. du Pont de Nemours and Company

## FIRST AMENDMENT TO
## ENVIRONMENTAL COMPLIANCE AGREEMENT

This First Amendment (the "First Amendment") to Environmental Compliance Agreement (the "Consent Decree Agreement") is made this $\underline{10}^{th}$ day of September, 2015 between E. I. du Pont de Nemours and Company ("DuPont") and The Chemours Company FC, LLC ("Chemours").

WHEREAS, DuPont has executed a Consent Decree with the United States, through the Environmental Protection Agency ("EPA"), which was lodged in the United States District Court for the Southern District of West Virginia in *United States v. E. I. du Pont de Nemours and Company* under Civil Action No. 2:14-25143 (the "Consent Decree");

WHEREAS, the Consent Decree identifies requirements applicable to certain process operations at the chemical manufacturing plant located at 901 DuPont Avenue in Belle, West Virginia (the "Belle Plant Processes");

WHEREAS, DuPont undertook a corporate reorganization after executing the Consent Decree that resulted in the formation of a wholly-owned subsidiary corporation, Chemours;

WHEREAS, on January 28, 2015, DuPont and Chemours (hereinafter, collectively, the "Parties") executed the Consent Decree Agreement (attached to this First Amendment as Attachment "A"), pursuant to which Chemours acknowledged the applicability of the Consent Decree, and accepted legal responsibility for satisfaction of all provisions of the Consent Decree;

WHEREAS, Chemours became the legal owner of, and began exercising operational control over, the Belle Plant Processes on February 1, 2015;

1487554_1.docx

EXHIBIT 1

WHEREAS, on June 1, 2015, Chemours sold to Optima Belle, LLC ("Optima") certain process units at the Belle Plant that are subject to the Consent Decree (the "Optima Processes");

WHEREAS, pursuant to an agreement executed between Chemours and Optima, dated March 2015 and titled "Agreement Governing Satisfaction of EPA Consent Decree" (the "Optima Agreement"), Chemours retained responsibility for satisfying all obligations of the Consent Decree subsequent to the transfer of the Optima Processes from Chemours to Optima;

WHEREAS, the Optima Agreement preserves to Chemours all legal rights necessary for Chemours to satisfy the obligations of the Consent Decree, including a legal right of access to all Optima Processes;

WHEREAS, Chemours became a publicly-traded company, independent of DuPont, on July 1, 2015; and

WHEREAS, through the Consent Decree Agreement and this First Amendment, the Parties intend to ensure the satisfaction of all provisions of the Consent Decree;

WHEREAS, the Parties intend to further clarify through this First Amendment the manner in which satisfaction of the Consent Decree obligations shall be ensured notwithstanding the transfer from DuPont or Chemours of any of the Belle Plant Processes;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the Parties agree to clarify the Consent Decree Agreement through this First Amendment as follows:

2

1487554_1.docx

1.      All provisions of the Consent Decree Agreement remain in full force and effect, except to the extent modified by this First Amendment.

2.      Paragraph 2 of the Consent Decree Agreement is replaced with the following paragraph:

> 2.      Chemours further acknowledges that Chemours shall take legal possession of the Belle Plant Processes subject to the rights and obligations set forth in the Consent Decree.  DuPont and Chemours expressly recognize that neither the transfer of the Belle Processes to Chemours nor execution of this Agreement has the effect of modifying in any way the obligations imposed under the Consent Decree.

3.      Paragraph 5 of the Consent Decree Agreement is replaced with the following paragraph:

> 5.      Chemours shall accept responsibility for satisfaction of all provisions of the Consent Decree after the Effective Date.  Because DuPont, as a named party to the Consent Decree, remains responsible to the United States, through the EPA, for ensuring the satisfaction of the provisions of the Consent Decree, Chemours further commits that, for the full period during which DuPont is subject to the Consent Decree, in the event that Chemours defaults on its obligations hereunder to satisfy all provisions of the Consent Decree:
>
> a.      Chemours shall take such actions as may be necessary to ensure that DuPont shall have such legal right of access to the Belle Plant

3

1487554_1.docx

Processes necessary for DuPont to satisfy any remaining

obligations under the Consent Decree; and

b.  Chemours shall promptly provide to DuPont all information

reasonably requested by DuPont for DuPont to satisfy any

remaining reporting and certification requirements under the

Consent Decree.

Chemours' obligations under this paragraph shall remain in full force and effect

notwithstanding the transfer of any legal interest in the Belle Plant Processes to any third

party, including but not limited to Optima.

4.    Each undersigned representative certifies that he or she is fully authorized to

enter into the terms and conditions of this First Amendment and to execute and legally bind

his or her respective company to the terms and conditions of this First Amendment.

IN WITNESS WHEREOF, the Parties have duly executed this First Amendment to

the Consent Decree Agreement as of the date first written above.

*[Remainder of page intentionally left blank.]*

4

1487554_1.docx

THE CHEMOURS COMPANY FC, LLC

E. I. DU PONT DE NEMOURS
AND COMPANY

By: _____

By: _Matthew Kosnaye_

Title: _____

Title: _Global VP Manufacturing_

Dated: _____

Dated: _9/10/2015_

5

1487554_1.docx

THE CHEMOURS COMPANY FC, LLC

E. I. DU PONT DE NEMOURS
AND COMPANY

By: _____

By: _____

Title: _Plant Manager_

Title: _____

Dated: _10-September 2015_

Dated: _____

By: _____

Title: _PRESIDENT_

Dated: _17 SEPTEMBER 2015_

5

1487554_1.docx

## ENVIRONMENTAL COMPLIANCE AGREEMENT

This Environmental Compliance Agreement (the "Agreement") is made this 28th day of January, 2015 between E. I. du Pont de Nemours and Company ("DuPont") and The Chemours Company FC, LLC ("Chemours").

WHEREAS, DuPont has undertaken a corporate reorganization (the "DuPont Reorganization") resulting in the formation of a wholly-owned subsidiary corporation, Chemours;

WHEREAS, following implementation of relevant steps associated with the corporate reorganization, Chemours shall be the legal owner of, and exercise operational control over the chemical manufacturing plant located at 901 DuPont Avenue in Belle, West Virginia (the "Belle Plant Processes");

WHEREAS, DuPont anticipates that Chemours' ownership and operational interests in the Belle Plant Processes shall be effective on or after February 1, 2015 (the "Effective Date");

WHEREAS, DuPont has executed a Consent Decree with the United States, through the Environmental Protection Agency ("EPA"), which was lodged in the United States District Court for the Southern District of West Virginia in *United States v. E. I. du Pont de Nemours and Company* under Civil Action No. 2:14-25143 (the "Consent Decree");

WHEREAS, the Consent Decree imposes requirements on the Belle Plant Processes that will apply subsequent to the Effective Date;

WHEREAS, the Consent Decree includes a provision imposing notification requirements in the event of a transfer of ownership or operational control of the Belle Plant Processes; and

WHEREAS, DuPont and Chemours (the "Parties") intend to ensure the satisfaction of all provisions of the Consent Decree, relevant to both the substantive obligations applicable to the Belle Plant Processes and the notification requirements applicable to facility transfer.

NOW, THEREFORE, in consideration of the mutual covenants contained in this Agreement, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Chemours acknowledges that DuPont has provided to Chemours a copy of the Consent Decree and associated Complaint, copies of which are included as Attachment "A" hereto.

2.      Chemours further acknowledges that Chemours shall take legal possession of the Belle Plant Processes subject to the rights and obligations set forth in the Consent Decree, which are not resolved, terminated, or otherwise modified by this Agreement or as a result of the DuPont Reorganization.

3.      DuPont represents that it has provided Chemours with all information necessary for Chemours to identify the obligations and liabilities under the Consent Decree applicable to the Belle Plant Processes.

4.      Chemours represents that it has the financial and technical ability to assume and satisfy the obligations and liabilities imposed by the Consent Decree as they relate to the Belle Plant Processes.

5.      Chemours shall accept responsibility for satisfaction of all provisions of the Consent Decree after the Effective Date.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the date first written above.

2

1382301_1.docx

**THE CHEMOURS COMPANY FC, LLC**

By: _____

Title: _Chemours President_

Dated: _1-28-15_

**E. I. DU PONT DE NEMOURS AND
COMPANY**

By: _____

Title: _Plant Manager_

Dated: _1-28-2015_

3

1382301_1.docx

Mroczek, Cara (ENRD)
to:
Frank_Volk@wvsd.uscourts.gov, Call, Gary (USAWVS), bcassidy@mankogold.com,
mdillon@mankogold.com, pdurst@spilmanlaw.com
09/16/2015 05:55 PM
Hide Details
From: "Mroczek, Cara (ENRD)" <Cara.Mroczek@usdoj.gov> Sort List...
To: "Frank_Volk@wvsd.uscourts.gov" <Frank_Volk@wvsd.uscourts.gov>, "Call, Gary
(USAWVS)" <Gary.Call@usdoj.gov>, "bcassidy@mankogold.com"
<bcassidy@mankogold.com>, "mdillon@mankogold.com" <mdillon@mankogold.com>,
"pdurst@spilmanlaw.com" <pdurst@spilmanlaw.com>

Mr. Volk,

The United States does not have any concerns with the Court incorporating the Sept 11, 2015 filings as an
additional Appendix to the proposed consent decree.

Thank you for the update.

Cara M. Mroczek
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
P.O. Box 7611
Washington, DC  20044-7611
Overnight Mail: ENRD, Room 6126
601 D. Street N.W.
Washington, DC  20004
ph. (202) 514-1447
cara.mroczek@usdoj.gov

Frank

In support of entry of the consent decree, DuPont would not oppose the attachment to
the Consent Decree the Environmental Compliance Agreement and First Amendment to
Environmental Compliance Agreement (as updated by yesterday's filing).

Please let me know if you have any questions.

Thank you.
Paula

**Paula L. Durst**
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East (ZIP 25301)
Post Office Box 273
Charleston, WV 25321-0273
304.340.3834 - office
304.545.4483 - mobile
304.340.3801 - fax
pdurst@spilmanlaw.com
View My Bio



*Excellence. Value. Get There!™*